1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                         CENTRAL DISTRICT OF CALIFORNIA

11

12

13    UNITED STATES OF AMERICA,            )   CASE NO. CR 10-00595 MMM
                                           )
14                     Plaintiff,          )
                                           )   ORDER GRANTING DEFENDANT'S
15            vs.                          )   MOTIONS IN LIMINE
                                           )
16    JUANA CESIVEL GARCIA,                )
                                           )
17                     Defendant.          )
                                           )
18    _____       )

19

20          On June 8, 2010, defendant Juana Cesivel Garcia was charged in a multi-defendant

21    indictment with (1) possession with intent to distribute at least 5 grams of actual

22    methamphetamine, at least 5 grams of a mixture or substance containing cocaine in the form of

23    crack cocaine, and a mixture or substance containing a detectable amount of cocaine, in violation

24    of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (2) intentionally aiding, abetting, counseling,

25    inducing, and procuring the possession with intent to distribute 25.5 grams of actual

26    methamphetamine by concealing the controlled substance underneath her car seat with her feet

27    when law enforcement officers stopped the vehicle in which she was riding, in violation of 21

28    U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2(a); (3) intentionally aiding, abetting,

counseling, inducing, and procuring the possession with intent to distribute 38.33 grams of a mixture or substance containing cocaine base in the form of crack cocaine by concealing the controlled substance underneath her car seat with her feet when law enforcement officers stopped the vehicle in which she was riding, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2(a); and (4) intentionally aiding, abetting, counseling, inducing, and procuring the possession with intent to distribute 190.48 grams of a mixture or substance containing a detectable amount of cocaine by concealing the controlled substance underneath her car seat with her feet when law enforcement officers stopped the vehicle in which she was riding, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2(a).[1]

On June 14, 2010, Garcia appeared before the court, together with her codefendant, Mateo Diaz Morales, and entered a not guilty plea. The court set case management deadlines, directing the government to turn over any discovery in its possession no later than June 21, 2010, and stating that any discovery not turned over to defendant by June 30, 2010 would not be admissible at trial.

On July 6, 2010, the deadline the court set for the filing of motions *in limine*, defendant filed two motions. First, she moved to exclude a then-unnamed drug trafficking expert witness.[2] Second she moved to exclude evidence of a prior conviction she had sustained.[3] Defendant based both motions on the fact that neither the expert report nor evidence of the prior conviction was produced to her in discovery before the June 30, 2010 deadline set by the court. The motion seeking to exclude the conviction related was also based on Rule 404(b) of the Federal Rules of

---

[1]Indictment, Docket No. 17 (June 8, 2010).

[2]Notice of Motion and Motion in Limine ("Motion re Expert"), Docket No. 30 (July 6, 2010). See also Reply Memorandum in Support of Motion in Limine to Exclude Testimony of Proposed Drug-Trafficking Expert Witness ("Reply re Expert"), Docket No. 35 (July 20, 2010).

[3]Notice of Motion and Motion in Limine to Exclude Evidence of Juana Garcia's Prior Offense ("Motion re Prior Offense"), Docket No. 31 (July 6, 2010). See also Reply Memorandum in Support of Motion in Limine to Exclude Evidence of Juana Garcia's Prior Offense ("Reply re Prior Offense"), Docket No. 36 (July 20, 2010).

1    Evidence.  The government opposed both motions.[4]

2

3                          **I.  FACTUAL BACKGROUND**

4        In May 2006, defendant Morales, then and now the husband of defendant Garcia, was

5    incarcerated for drug trafficking.  Police officers working on the Vice Narcotics Detail and Special

6    Enforcement Detail of the Burbank Police Department received information from two confidential

7    informants that defendant Garcia had taken over the family narcotics business.  Members of the

8    details commenced surveillance of Garcia; they observed her using a vehicle to transport narcotics

9    to customers and employing "counter-surveillance driving to detect/evade law enforcement."[5]  On

10   May 29, 2006, officers observed Garcia conduct a hand-to-hand drug transaction from her car.

11   Thereafter, Garcia's driving became increasingly erratic causing officers to fear that she was

12   attempting flee.  The officers therefore stopped her vehicle.  Garcia was observed removing a bag

13   from view and attempting to hide it behind the passenger seat.  She gave the officers a fake name.

14   After being confronted with her true identity, Garcia stated that she had no drugs in her possession

15   and consented to a search of the car.  The officers found approximately 28 grams of

16   methamphetamine and $300 in cash in Garcia's purse, as well as more methamphetamine and

17   cocaine in a pouch on the passenger seat.  The drugs were packaged in small plastic bags for

18   distribution.  When the officers asked whether Garcia had drugs at her residence, she said she did

19   not and consented to search of her residence.  In her bedroom closet, the officers found a bag of

20   methamphetamine, money, small plastic bags, a digital scale, a small scoop, and scissors.

21   Garcia's two small children were in the room where the drugs and paraphernalia were found.  In

22   total, the officers seized 27 grams of methamphetamine, 21 grams of crack cocaine, 19 grams of

23   powder cocaine, and $615 in cash.  The police report noted that Garcia was observed during a

24   ─────────────────

25       [4]Government's Opposition to Defendant's Motion in Limine to Exclude Evidence of Juana
     Garcia's Prior Offense ("Opp. re Prior Offense"), Docket No. 32 (July 13, 2010); Government's
26   Opposition to Defendant's Motion in Limine to Exclude Testimony of Government Expert ("Opp.
     re Expert"), Docket No. 33 (July 13, 2010).
27

28       [5]Opp. re Prior Offense at 8.

                                          3

previous surveillance conducting transactions with her children in the car. On October 20, 2006, Garcia pleaded guilty to felony transportation of a controlled substance for sale and was sentenced to 180 days jail and three years probation.[6]

On March 10, 2010, acting on information provided by a confidential informant, the Pasadena Police Department set up surveillance at the residence of a female drug trafficker where a suspected drug transaction was to take place. Morales and Garcia, who were under surveillance, drove up to the residence. Morales was driving, Garcia was in the passenger seat, and their two children, then-aged eleven and nine years old, were in the back seat. Morales entered the residence alone and exited carrying a bag. He and his family departed thirty minutes after arriving.

Pasadena police officers conducted a traffic stop of defendants' vehicle for a defective brake light. Morales identified himself as Salomon Diaz and presented a California identification card bearing that name. The officers concluded that Morales appeared nervous and stuttered. Officer Torres, who approached the front passenger side, noted that Garcia appeared nervous and was moving her legs back and forth. Torres saw Garcia move her feet from front to back in a sweeping motion in what appeared to him to be an attempt to conceal something underneath her seat. Torres asked both defendants if they had been arrested before. Garcia said she had been stopped in a car containing a large amount of narcotics, but had been released because she did not know the drugs were present. Morales did not respond.

Morales gave Torres consent to search the vehicle. During a search of Morales's person, Officer Torres found $1,661 of cash in small denominations and two cell phones. Morales falsely stated that the two children were not his. When asked, Garcia said that Morales was her brother-in-law, Salomon Diaz.

A narcotics detection canine alerted to the outside of the car, specifically on the passenger side. The canine lunged at a black fanny pack of the floorboard of the front passenger seat. Office Watties examined the fanny pack and found that it contained methamphetamine, crack

---

[6]*Id.* at 8–9.

4

1   cocaine, and powder cocaine.  The officers arrested both defendants.  On questioning at the station

2   house, Morales admitted that he had lied about his identity.  Garcia was searched by a female

3   officer after requesting to use the restroom.  The female officers discovered $1,210 in cash in a

4   wallet secreted between her underwear and her pants.  The next day, the officers hid the cash

5   seized from each defendant to determine whether the narcotics detection canine would alert to the

6   scent of narcotics on the cash.  The canine alerted to the cash taken from each defendant,

7   suggesting that both were in possession of money that had recently been touched by people who

8   had recently been in contact with drugs.

9           On May 6, 2010, the government filed a criminal complaint against both defendants.  On

10  May 10, 2010, they appeared before Judge Paul L. Abrams, who ordered both detained pending

11  trial.  The government states that on May 11, 2010, it produced "'a copy of the defendant's prior

12  criminal record.'"  This, however, is not supported by the cited exhibits.[7]  On June 11, 2010, the

13  government filed an information charging each defendant with a prior felony drug conviction

14  under 21 U.S.C. § 851.[8]  The pleading references Garcia's October 20, 2006 conviction, but

15  includes no additional information regarding the offense.[9]  On June 22, 2010, government counsel

16

17  [7]Opp. re Prior Offense at 6.  The use of quotations marks in the opposition suggests that
    this language was used in the cited exhibit.  Exhibit A, which is dated May 11, 2010, reads:

18      "To facilitate a pre-indictment plea of this matter, I am enclosing pre-indictment

19      discovery *relating to the traffic stop* that is the subject of this prosecution.
        Accordingly, enclosed please find copies of the pre-indictment discovery, bates-

20      stamped 0001-0056."  (*Id.*, Exh. A (emphasis supplied).)

21  Although the government has not proffered the 56 pages of discovery attached to the letter, the
    letter does not contain the quoted language as the government intimates.  The court is thus in

22  doubt as to whether discovery Morales's and Garcia's prior offenses – as opposed to discovery

23  concerning the May 10, 2010 traffic stop – was produced on May 11.

24  [8]Information Establishing Prior Felony Drug Convictions for Defendants Mateo Diaz

25  Morales and Juana Cesivel Garcia ("Information re Prior Offenses"), Docket No. 22 (June 11,
    2010).

26  [9]*Id.* at 4 ("Defendant JUANA CESIVEL GARCIA ('GARCIA'), prior to committing the

27  offenses alleged in Counts One, Two, and Three of the Indictment in the above-entitled case, had
    been finally convicted under the laws of the State of California, namely, on or about October 20,

28  2006, in the Superior Court of California for the County of Los Angeles, case number GA066578,

                                                    5

provided written notice that she was

> "in the process of obtaining reports relating to the prior convictions of [both defendants] to determine whether any of those prior crimes should be admitted under Federal Rule of Evidence 404(b). Once those reports are received, I will produce them to [counsel]."[10]

The government contends that this letter constituted "written notice that it intended to offer" Rule 404(b) evidence at trial.[11] The letter does not support this characterization. Rather, it states that the government was in the process of determining whether it would seek to admit such evidence. The government states that its intent to offer evidence of Garcia's prior conviction "was also previously conveyed to [her] counsel telephonically."[12] Given that the June 22, 2010 letter indicates the government had not yet formed an intent to offer evidence of the prior conviction, it is clear that any telephonic communication regarding the subject must have occurred subsequent to that date.

On July 2, 2010, the government notified Garcia: (1) that the government was still not in possession of police reports related to the 2006 conviction; (2) that the reports were a matter of public record and accessible to both parties equally; and (3) that the government would provide defendant with a copy of the reports once they had been received.[13]

The July 2 letter also stated that the government intended to introduce expert testimony at trial:

---

defendant GARCIA was convicted of the crime of Transportation and Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11352(A), and the crime of Transportation and Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11379(A)").

[10]Opp. re Prior Offense, Exh. B at 1.

[11]*Id.* at 6–7.

[12]*Id.* at 7.

[13]*Id.*, Exh. C at 1–2.

6

"In addition, the government intends to introduce expert testimony of a law enforcement officer who has training and experience relating to drug trafficking. That expert's testimony may include: (1) the common practices of drug traffickers; (2) factors indicating whether drugs are possessed for purposes of distribution versus personal use, such as drug quantities, drug packaging, the lack of drug use paraphernalia, and the possession of large quantities of cash in small denominations; and (3) common methods used by drug traffickers to evade law enforcement detection, such as making false statements to police officers (including those relating to criminal history), the use of false or fictitious names, the concealment of drug proceeds and other evidence of drug trafficking, and having minors present to dispel suspicion of criminal activity."[14]

Later on July 2, 2010, the government received the Burbank Police Department's reports concerning Garcia's prior arrest and conviction and faxed the reports to defense counsel.[15]  On July 6, 2010, defendant filed the pending motions.  Two days later, on July 8, 2010, the government identified Brian W. Rose as its expert witness.  The government's opposition states that prior to that date, "the government was unaware of who would agree to operate in this capacity."[16]  That night, the government emailed Rose's curriculum vitae and a brief summary of his testimony drafted by government counsel to Garcia's attorney.

## II.  DISCUSSION

### A.    Whether the Court Will Exclude Evidence for Violation of its Discovery Order

In *United States v. Roybal*, 566 F.2d 1109 (9th Cir. 1977), the Ninth Circuit recognized that district courts have the supervisory power to remedy prejudice caused by the government's untimely disclosure of evidence in violation of a specific discovery order.  The *Roybal* court held

---

[14]*Id.*, Exh. C at 2.

[15]*Id.* at 7; Motion re Prior Offense, Exh. 2.

[16]Opp. re Expert at 1.

1   that the late disclosure of information the government elicited through informant witnesses had

2   prejudiced the defendant.  It explicitly noted that the evidence was not exculpatory within the

3   meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), nor within the ambit of the Jencks Act, 18

4   U.S.C. § 3500(e).  The Ninth Circuit's decision, moreover, made no reference to Rule 16 of the

5   Federal Rules of Criminal Procedure.  It merely emphasized that the provision of late discovery

6   in violation of a specific order resulted in "unfairness and potential prejudice to the defendant"

7   as well as "the unfairness and discourtesy to the trial judge," and concluded that reversal of the

8   conviction was appropriate.  *Roybal*, 566 F.2d at 1110–11.

9         The Ninth Circuit later relied on *Roybal* in *United States v. Gatto*, 763 F.2d 1040 (9th Cir.

10  1985).  There, it held that a delay in disclosure did not violate any constitutional provision, federal

11  statute, *specific discovery order*, or any other recognized right except perhaps rule 16," and thus

12  did not warrant exclusion of the evidence.  The court noted that Rule 16 has "specific remedies

13  for its violation [that] eliminate[ ] any justification for an exercise of supervisory power to create

14  any other remedy for it."  It cited *Roybal*, however, for the proposition that courts have

15  "supervisory power to remedy [the] prejudice of untimely disclosures of evidence in violation of

16  [a] specific discovery order by sanctions as severe as conviction reversals."  *Id.* at 1047 (citing

17  *Roybal*, 566 F.2d at 1110–11).  Three years later, in *United States v. Schwartz*, 857 F.2d 655 (9th

18  Cir. 1988), the Ninth Circuit reaffirmed "that the district court may exclude documents or

19  witnesses as a sanction for failure to comply with the court's pretrial or discovery orders."  *Id.*

20  at 659.[17]

21        In *United States v. Talbot*, 51 F.3d 183 (9th Cir. 1995), the government did not provide

22

---

23      [17]The *Schwartz* court found the district court's discovery order ambiguous, and construed

24  the ambiguity in the government's favor.  The district court's pretrial guidelines directed the
    parties to file a "list of witnesses whom they *intend* to call at trial."  *Schwartz*, 857 F.2d at 659

25  (emphasis original).  The court held that the government could not violate the order unless "when
    it filed its witness list, it then intended to call [a particular witness] to testify" who was not

26  disclosed.  *Id.*  If the government formed the intention to call the witness after the witness list had
    been filed, the court stated, no violation occurred.  Here, the court's order clearly stated that the

27  government could not introduce evidence that constituted discovery properly turned over to

28  defendant unless it provided that discovery to the defendant by June 30, 2010.

a witness list until several weeks after the deadline set by the court.  The government offered no excuse for the delay.  The appellate court held that because "a violation of a 'specific discovery order' ha[d] been demonstrated, the district court was free to exclude the government's witness." *Id.* at 188 (quoting *Gatto*, 763 F.2d at 188).[18]  The court noted the government's concession that it had violated the discovery order, albeit "without willfulness or prejudice," *id.* at 188 n. 5, and affirmed the district court's exclusion order without a finding that the government was, in fact, willful or that defendant had been prejudiced.

Most recently, in *United States v. W.R. Grace* ("*Grace II*"), 526 F.3d 499 (9th Cir. 2008) (en banc), the Ninth Circuit considered the issue of the violation of a district court's discovery order at some length.  There, the government challenged both the district court's power to order pretrial discovery over and above that mandated by Rule 16, and the district court's power to exclude evidence that was not timely produced.  The Ninth Circuit first held that in drafting Rule 16, Congress did not intend "to bar district courts from exercising their discretionary authority to order pretrial discovery and disclosures from the government under terms and conditions that courts normally use to manage the fair and efficient conduct of trials." *Id.* at 512.  Rather, it stated, the district court has "inherent authority to manage its docket, may in appropriate circumstances require the government to" make pretrial discovery on conditions it outlines, and "has the authority to enforce such an order." *Id.* at 513.[19]  "The government's discretion to

---

[18]The government in connection with both motions states repeatedly that Rule 16 does not mandate disclosure of expert witnesses or Rule 404(b) evidence by a date certain.  The government does not address in any way Ninth Circuit case law regarding violation of a specific discovery order.  In *Talbot*, it appears the government also argued that no federal rule required disclosures of the nature directed by the district court.  The Ninth Circuit held that although "the defendant has no right to a list of prospective government witnesses . . . in the instant case, the pretrial scheduling order required the government to produce a witness list before trial." *Talbot*, 51 F.3d at 188 n. 4.  It noted explicitly that Rule 16 was "irrelevant to this disposition." *Id.* at 188 n. 5.  Consequently, the bulk of the government's opposition is not relevant to the disposition of this motion.  The pertinent inquiry is not whether Rule 16 was violated, but whether the court's discovery order was violated.

[19]In *Grace II*, the district court required that the government disclose its "*final* list of witnesses a year before trial." *Grace II*, 526 F.3d at 513 (emphasis original).  The Ninth Circuit

1   investigate and present its case does not override the district court's authority to manage the trial

2   proceedings-including by setting discovery and disclosure deadlines." *Id.* at 515.

3       The *Grace II* court next addressed the government's objection to exclusion of evidence for

4   violation of the discovery order.  It emphasized that the government had mischaracterized the

5   exclusion order as a "sanction," stating: "The enforcement orders were not imposed as a sanction;

6   they simply enforce the earlier pretrial order requiring the timely identification of trial witnesses

7   and documentary evidence." *Id.* at 514.  Moreover, the court noted that even were the

8   enforcement orders to be viewed as a "sanction, they still would not be an abuse of the court's

9   discretion." *Id.*

10      The government urged the court to apply a rule articulated in *United States v. Finley*, 301

11  F.3d 1000 (9th Cir. 2002).  *Finley* involved a violation of Rule 16, and held that "[e]xclusion is

12  an appropriate remedy for a discovery rule violation only where 'the *omission* was willful and

13  motivated by a desire to obtain a tactical advantage.'" *Id.* at 1018 (quoting *Taylor v. Illinois*, 484

14  U.S. 400, 415 (1988)).  The *Grace II* court, however, ruled that *Finley* "involved a defendant's

15  right to present evidence, not the government's, and [held it] ha[d] no bearing" on a case in which

16  the district court had excluded the government's evidence.  *Grace II*, 526 F.3d at 515 (citing

17  *Finley*, 301 F.3d at 1018 ("Because the Supreme Court has recognized that '[f]ew rights are more

18  fundamental than that of an accused to present witnesses in his own defense,' . . . courts should

19  use particular caution in applying the drastic remedy of excluding a witness altogether")).  The

20  court concluded that, "[a]lthough there are limits to the district court's inherent authority, the

21

22  ─────────────────────

23  found this to be a reasonable exercise of discretion.  In so concluding, the court noted that the
    government did not object to the discovery deadline when it was imposed, and did not seek to
24  amend the case management order; "it simply and unilaterally" asserted its right to supplement
    the list prior to trial.  *Id.*  Similarly, here, government counsel did not object to the discovery
25  deadline when it was imposed and did not ask the court to amend the schedule.  It "simply and
    unilaterally" alerted defendant *after* the discovery cut-off had passed that it would be
26  supplementing its discovery.  Even after defense counsel informed the government that he would
    file a motion to enforce the discovery cut-off date, as acknowledged in the government's July 2,
27  2010 order, the government still did not request that the court amend the case management order,
    and continued to produce additional discovery that it intended to offer at trial.
28

district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order." *Id.* at 516.

*Grace II* held that the standard articulated in *Finley*, which requires a showing of willfulness or a motivation to obtain a tactical advantage, does not apply to a case such as this where the defendant seeks to exclude government evidence. While *Grace II* indicates that there are limits on exclusion as a remedy, it does not provide any guidance regarding the nature of those limits nor the standard a court should apply in determining whether to exclude evidence. Since *Grace II*, no court in this circuit has addressed the question in a published opinion.

It is notable that both *Grace II* and *Talbot*, the only two Ninth Circuit cases in which the exclusion of evidence based on violation of a specific discovery order was upheld, do not identify prejudice to the defendant as a basis for their holding. Indeed, the facts in *Talbot* foreclose a finding that prejudice was a relevant inquiry. In *Talbot*, defendants had participated in a protest at a federal building. Defendants were charged with entering an authorized area without permission and for failing to obey the lawful order of a federal officer. Shortly before trial, the government superseded the original citations with an information that added a count of creating a disturbance. Although the date for disclosure of discovery had passed, the government named a new witness to testify to an element necessary to the new count. The district court dismissed the newly added claim under the Due Process Clause and excluded the testimony of the witness under its inherent power to enforce its discovery order. The Ninth Circuit reversed the district court's dismissal of the third count, holding that no prejudice had been shown. *Talbot*, 51 F.3d at 185–86. It affirmed exclusion of the witness whom the government wanted to call to testify to a necessary element of the charge, however, despite the fact that the addition of the third count and the identification of a new witness were intertwined. It is clear, therefore, that the latter ruling was not concerned with prejudice or lack thereof to defendant. Indeed, the Ninth Circuit specifically noted that the government's failure to disclose the witness had been "without willfulness or prejudice." It nonetheless affirmed the district court's exclusion order. *Id.* at 187–88 & n. 5. *Grace II* did not overrule *Talbot*; indeed, *Talbot* is cited favorably as support for *Grace II*'s decision. *Grace II*, 526 F.3d at 516. The court therefore concludes that under *Talbot*,

1    the defendant need not show prejudice before the court can exclude evidence disclosed in violation

2    of a specific discovery order.[20]   Under *Grace II*, it is similarly unnecessary to find that the

3    government's violation was willful or in bad faith.

4        The court concludes, therefore, that exclusion of the belatedly produced evidence is

5    appropriate.  As noted in *Grace II*, exclusion is not a sanction, but an enforcement of the court's

6    prior order.  The court's order governing discovery stated:

7        "<u>Final date for all discovery to be turned over to defendant is June 30, 2010.  Any</u>

8        <u>discovery submitted after this date will not be admissible at trial</u>."

9    Despite this admonition, the government now seeks to admit evidence that it did not produce to

10   defendant by June 30, 2010.  Particularly troubling is the government's insistence, not that its

11   noncompliance should be excused, but that it complied with all discovery requirements and that

12   the court lacks authority to set and enforce a discovery cut-off date.  The government argues that,

13   so long as it complied with Rule 16 of the Federal Rules of Criminal Procedure, "reliance on the

14   Court's Discovery Order to establish a discovery violation is inapposite."  It asserts that the court

15   is "without legal authority" to place an "intolerable burden" on the government by requiring it

16   to comply with such requirements.  This is troubling inasmuch as it implies that the government

17   believes it has discretion to determine whether it will comply with court orders.

18

---

19   [20]*United States v. Amlani*, 111 F.3d 705 (9th Cir. 1997), cited by the government, is not
20   to the contrary.  Although the government cites *Amlani* for the proposition that a violation of a
     specific discovery order must prejudice the defendant before exclusion is appropriate, *Amlani*
21   considered the standard for reversal of a conviction in a case where there had been violations of
     Rule 16 and *Brady*.  The court here does not apply the standard for reversal of a conviction, nor
22   does it consider the standard for determining Rule 16 or *Brady* violations.  As noted in *Grace II*,
23   exclusion based on violation of a specific discovery order is not a sanction; it is the enforcement
     of a prior court order.  The court issued an order directing the government to produce all
24   discovery prior to June 30, 2010. As discussed *infra*, the government's citation of *Amlani* is
     predicated on its misconception that failing to disclose evidence can lead to exclusion only when
25   Rule 16 has been violated, and that the court lacks authority to exclude evidence for violation of
26   its discovery order.  It also arises from the government's misconception that exclusion constitutes
     a "sanction."  (Opp. re Bad Acts at 12.)  As noted in *Grace II*, it is not a sanction to enforce a
27   deadline imposed at a hearing, and confirmed in a minute order, when the government had the
28   opportunity to object or request a continuance.

1   The government does not argue that it could not, with reasonable diligence, have produced
2   the Burbank police reports by June 30, 2010.  Indeed, the timeline presented by the government
3   indicates that when defense counsel noted that the government had not produced the police reports,
4   the government first asserted that it was under no obligation to provide the reports by any
5   particular date, and then sought and received the reports that very afternoon.  This suggests that
6   the delay in producing discovery was not the result of the fact that the government had difficulty
7   obtaining the reports from Burbank Police Department.  It was the result of the government's
8   delay in making the request.

9   Similarly, the government does not argue that it was unable, in the exercise of reasonable
10   diligence, to identify an expert witness prior to July 8, 2010.  The government's statement that
11   it did not know on July 2, 2010 who would "agree" to serve as an expert is somewhat puzzling,
12   given that the expert who was later designated is a government employee, not an outside expert.
13   Assuming that the government was attempting to ascertain which of several qualified experts could
14   testify during the first week of August, it provides no information as to when it began its efforts
15   to identify an expert, nor why it is that its search was just commencing as of July 2, 2010.

16   The court did not randomly select the schedule documented in its discovery order.  The
17   court required that discovery be complete no later than June 30, 2010 so that, one week later, both
18   the government and the defendant would be in a position to file motions *in limine* by the deadline
19   of July 6, 2010.  By delaying the designation of an expert witness until July 8, 2010, the
20   government deprived defendant of the opportunity to challenge the qualifications of the expert
21   and/or to argue that the proposed testimony was improper or unhelpful under Rule 702 of the
22   Federal Rules of Evidence.  If the court were to permit the government to now offer the expert's
23   testimony, and if defendant were to make one or more of these challenges, the court would be
24   forced to deal with the issue while trial was in progress, an inefficient process that often
25   inconveniences the jury and takes valuable time away from other trial activities.

26   The government offers no excuse for its noncompliance with the court's discovery order.
27   Rather, its argument is summarized in one sentence in its opposition brief: "Simply put, the

28

government cannot violate a discovery obligation where no obligation exists."[21]  The government

mischaracterizes several Ninth Circuit opinions,[22] and cites non-binding out-of-circuit opinions[23]

---

[21]Opp. re Prior Offense at 10.  The government cites *United States v. Robertson*, 634 F.Supp. 1020 (E.D. Cal. 1986), which it characterizes as binding Ninth Circuit precedent, although it is in fact a district court opinion from the Eastern District of California.  The government in *Robertson* had not produced certain evidence allegedly in the possession of the Internal Revenue Service, and the defendant brought a motion to compel production under Rule 16.  The court held that the government was under no obligation to disclose the evidence because it did not intend to introduce it during its case-in-chief, and because the court concluded that certain of the documents were not in the IRS's possession.  The court emphasized that its order did not foreclose the defendant from attempting to obtain the material by issuing a subpoena to the IRS, but that, because there was no obligation under Rule 16(a)(1)(C) to produce evidence that it did not intend to use in its case-in-chief, the discovery motion could not be granted.  *Id.* at 1028.  Given that *Robertson* addresses evidence the government did not intend to present during its case-in-chief and did not involved a discovery order issued by the court, it is inapposite and does not control the outcome here.

[22]In addition to the government's mischaracterization of *Amlani*, discussed *supra*, the government also cites *Gatto*, with use of both bold and italicized text, for the proposition that Rule 16 constitutes the governments only disclosure obligation.  (Opp. at 9.)  This is remarkable given that *Gatto* explicitly found no violation of a specific discovery order and also because *Gatto* was discussed at great length in *Grace II*, 526 F.3d at 515–16.  Notably, *Grace II*, and indeed any other case addressing violation of a discovery order, is not cited by the government.  See, e.g., *United States v. Audelo-Sanchez*, 923 F.2d 129, 130 (9th Cir. 1990) (considering duty of a prosecutor to fulfill obligations under Rule 16, but making no reference to a specific discovery order by the district court);

[23]The government asserts that in *United States v. Hourihan*, 66 F.3d 458 (2d Cir. 1995), the Second Circuit reject an identical request to exclude evidence.  The Second Circuit concluded that the government had fulfilled its Rule 16(a)(1)(B) obligation by disclosing a defendant's prior criminal record but not the facts underlying the prior conviction.  *Id.* at 463.  *Hourihan* did not involve a specific discovery order issued by the district court.  As to that subject, *Grace II*, and not *Hourihan*, constitutes the law of this circuit.

The government next argues that *United States v. McKenzie*, 768 F.2d 602 (5th Cir. 1985), controls the outcome here.  In *McKenzie*, the Fifth Circuit concluded that where exculpatory evidence is in the control of a third party and not the government, the government is under no obligation to produce the evidence under *Brady*.  *Id.* at 608.  *McKenzie* does not address a specific discovery order and appears to concern exculpatory material rather than evidence the government intends to introduce at trial.  The same is true of *United States v. Wilson*, 901 F.2d 378 (4th Cir. 1990), in which the Fourth Circuit concluded that the government had no obligation under *Brady* to turn over "exculpatory information" not in its possession that was "not only available to the defendant but also [lay] in a source where a reasonable defendant would have looked." *Id.* at 381.

1    that, if followed, would deprive the court of the authority granted in *Grace II* to manage the

2    discovery schedule.   Consequently, the court grants defendant's motion *in limine* to exclude the

3    testimony of the government's expert on drug trafficking in its entirety.   The court grants

4    defendant's motion *in limine* to exclude evidence of her prior conviction to the extent the

5    government seeks to introduce evidence, including the police reports, not produced to the

6    defendant by June 30, 2010.

7    **B.    Whether the Fact of the Prior Convictions Is Admissible Under Rule 404(b)**

8            In contrast to the detailed information regarding defendant's prior arrest contained in the

9    Burbank police reports, the government put defendant on notice of the fact that it intended to

10   prove up Garcia's prior convictions prior to June 30, 2010 – specifically, on June 11, 2010, when

11   it filed an information under 21 U.S.C. § 851.   The government also seeks to admit the

12   convictions at the underlying trial under Rule 404(b).

13           Rule 404(b) bars "[e]vidence of other crimes, wrongs, or acts . . . to prove the character

14   of a person in order to show action in conformity therewith."   FED.R.EVID. 404(b).   The

15   evidence may be offered, however, "for other purposes, such as proof of motive, opportunity,

16   intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."   *Id*.   The

17   government argues that defendant's prior convictions are probative of her knowledge, intent, and

18   absence of mistake.

19           The Ninth Circuit has held that Rule 404(b) is an "inclusionary rule – 'evidence of other

20   crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal

21   propensities. . . .'"   *United States v. Sneezer*, 983 F.2d 920, 924 (9th Cir. 1992) (quoting *United*

22

23

24   Similarly, in *United States v. Grossman*, 843 F.2d 78 (2d Cir. 1988), the Second Circuit
     concluded that "*Brady* [did] not require the government to turn over exculpatory evidence 'if the
25   defendant knew or should have known the essential facts permitting him to take advantage of any
     exculpatory evidence.'"   *Id*. at 85 (quoting *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.
26   1987)).   The government's reliance on out-of-circuit authority concerning *Brady* material that the
     government has no intention of offering as evidence is unavailing because here the court issued
27   a specific discovery order directing that the government disclose all evidence it intended to offer
28   in its case-in-chief by a date certain.

1   *States v. Diggs*, 649 F.2d 731, 737 (9th Cir.), cert. denied, 454 U.S. 790 (1981)).  To admit

2   evidence of prior bad conduct for one of the purposes identified in the rule during a criminal trial,

3   the evidence must: ". . . (1) be relevant to a material element of the offense; (2) be similar to the

4   charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time." *United*

5   *States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000) (citing *United States v. Houser*, 929 F.2d

6   1369, 1373 (9th Cir. 1990)); see also *United States v. Montgomery*, 150 F.3d 983, 1000-01 (9th

7   Cir. 1998) ("We have adopted a four-part test to determine the admissibility of evidence under

8   Rule 404(b).  First, the evidence of other crimes must tend to prove a material issue in the case.

9   Second, the other crime must be similar to the offense charged.  Third, proof of the other crime

10  must be based on sufficient evidence.  Fourth, commission of the other crime must not be too

11  remote in time," citing *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)).

12          Rule 404(b) additionally requires that the trial judge balance the probative value of the

13  evidence against its prejudicial effect.  As the Advisory Committee Notes to Rule 404 state: "The

14  determination must be made whether the danger of undue prejudice outweighs the probative value

15  of the evidence in view of the availability of other means of proof and other facts appropriate for

16  making decision[s] of this kind under Rule 403."  See also *Montgomery*, 150 F.3d at 1001 ("In

17  addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403

18  balancing test – its probative value must not be substantially outweighed by the danger of unfair

19  prejudice").  "The Government has the burden of demonstrating that the evidence of other crimes

20  satisfies these requirements."  *Id.*

21                          **a.    Materiality**

22          Applying these criteria to the evidence the government proposes to offer, the court must

23  first examine whether the evidence tends to prove a material issue in the case.  In the Ninth

24  Circuit, an issue need not be actually disputed to be "material" for purposes of Rule 404(b).  See

25  *United States v. Mayan*, 17 F.3d 1174, 1182 (9th Cir. 1994) ("Appellant argues first that the prior

26  bad act testimony of the co-defendants was simply not relevant to any material point at issue in

27  his trial.  It was not relevant to show knowledge or intent, appellant contends, because those

28  elements were not disputed: his defense was that he did not participate in the alleged conspiracy

at all. . . .  In response, the government contends that knowledge and intent were material issues in the case simply because the government had to prove them.   The government is correct on this point"); *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992) ("The government argues that the evidence was material to the issues of knowledge, the background and development of the conspiracy charged, and association and plan.   Jones contends that since he entirely denied his participation in the crime, proof of these issues is irrelevant.   Knowledge and intent are, however, elements of possession with intent to distribute marijuana.   Intent is also an element of criminal conspiracy, and of aiding and abetting in the commission of a crime.   The fact that Jones chose not to contest those particular elements of the crime did not relieve the government of its burden of proving them beyond a reasonable doubt, and the government therefore was permitted to introduce evidence of Jones' prior acts so long as the acts tended to make the existence of his knowledge or intent more probable than it would be without the evidence" (citations omitted)); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1325-26 (9th Cir. 1992) ("Before the prosecution may use [other crimes] evidence against a defendant, however, it must establish that the evidence is probative of a material issue in the case. . . .   Knowledge is an element of the crime of transportation of illegal aliens, see 8 U.S.C. § 1324(a)(1)(B), and thus appellant's knowledge was a material issue in this case.   Consequently, the government was permitted to prove Ramirez' knowledge through proof of his prior bad acts").

        Garcia has been charged with possession with intent to distribute narcotics as well as aiding and abetting same.   As noted, the government argues that Garcia's narcotics-related convictions are relevant to prove her knowledge, intent, and absence of mistake.   Knowledge and intent are material elements of the crime of possessing a controlled substance with intent to distribute.   21 U.S.C. § 841(a)(1).  See also *Howell*, 231 F.3d at 628 ("Howell's prior convictions are relevant because they tend to show knowledge, a material element of possession with intent to distribute cocaine. . . .   The prior convictions for possession of cocaine and possession with intent to deliver cocaine tend to show that Howell knew that the substance in the bag was a narcotic"); *Arambula-Ruiz*, 987 F.2d at 602 ("Arambula's prior conviction for possession of heroin with intent to distribute is relevant to a material element of the charged offense because it tends to show

17

1    knowledge.   Knowledge is a material element of the crime of possessing heroin with intent to

2    distribute").   See also *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (affirming

3    the admission of a prior conviction for attempted cocaine distribution in a case where the

4    government was required to prove that the defendant possessed cocaine with intent to distribute,

5    because the prior conviction was relevant to the "issues of knowledge and intent" and thus went

6    beyond mere character evidence); *United States v. Cazares*, 168 F.3d 502 (Table), 1999 WL

7    50863, *1 (9th Cir.  Jan.  7, 1999) (Unpub. Disp.) ("Because knowledge is a necessary element

8    of both possession under § 841 and importation under § 960, the evidence was relevant").

9        The Ninth Circuit has held that prior narcotics activities are relevant to establish intent,

10   knowledge or absence of mistake.  *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002)

11   (defendant's prior drug run was admissible to show that he knew he was transporting drugs on the

12   occasion charged); *Howell*, 231 F.3d at 628 (in a prosecution for possession of cocaine with intent

13   to distribute, evidence of defendant's prior convictions for possession of cocaine and possession

14   with intent to deliver cocaine were admissible, as they tended to show knowledge, a material

15   element of the charged offense, were relevant to rebut defendant's claimed innocent motive for

16   being present on a bus where drugs were found, were similar to the charged offense, and one was

17   sustained only months before his arrest on the current charge); *Montgomery*, 150 F.3d at 1001

18   ("A jury could properly infer from Buxton's prior conviction for conspiracy to manufacture

19   methamphetamine that he was sufficiently familiar with the illicit production of methamphetamine

20   so as to possess knowledge regarding its distribution"); *United States v. Otis*, 127 F.3d 829, 834

21   (9th Cir.1997) (holding in a money laundering case that evidence of defendants' prior drug

22   convictions was admissible under Rule 404(b) to show knowledge that money was derived from

23   cocaine sales where the prior convictions tended to show defendants' familiarity with the cocaine

24   business), cert. denied, 523 U.S. 1066 (1998); *United States v. Mehrmanesh*, 689 F.2d 822, 832

25   (9th Cir. 1982) ("We have consistently held that evidence of a defendant's prior possession or sale

26   of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and

27   absence of mistake or accident in prosecutions for possession of, importation of, and intent to

28   distribute narcotics").

The second question the court must examine is whether the other crimes evidence is similar to the offense charged. The Ninth Circuit has held that the degree of similarity required depends upon the evidentiary hypothesis being employed. *Arambula-Ruiz*, *supra*, 987 F.2d at 603 (quoting *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992)). When the evidentiary hypothesis is intent, the Ninth Circuit requires substantial similarity between the bad acts evidence and the crime charged. *Arambula-Ruiz*, 987 F.2d at 603 ("similarity is always required to prove identity of intent," quoting *Ramirez-Jiminez*, 967 F.2d at 1326 ("similarity is always required to prove identity of intent, since, 'if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action,'" quoting *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989)).

Where the evidentiary theory is knowledge, however, "the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Arambula-Ruiz*, 987 F.2d at 603 (quoting *Ramirez-Jiminez*, 967 F.2d at 1326). Here, the court need not distinguish between intent and knowledge, since Gracia's convictions clearly satisfy the similarity requirement for intent, and thus satisfy the knowledge standard as well. Garcia is charged with possession of cocaine and methamphetamine with intent to distribute as well aiding and abetting that conduct. Garcia's convictions for transportation and sale of a controlled substance are substantially similar to the crimes charged in the indictment.[24] Accordingly, this factor is satisfied.

There is, however, substantial question as to whether the government's evidence is

---

[24]Evidence offered under Rule 404(b) is evaluated in light of the crimes charged in the indictment. Evidence may be excluded under Rule 404(b) if it tends to prove only defendant's general criminal propensities, and is not relevant to the elements of one of the charged offenses. *United States v. Sneezer*, 983 F.2d 920, 924 (9th Cir. 1992). The Ninth Circuit has expressly rejected the argument that courts should distinguish between crimes based on the type of drugs involved, i.e., that the past and present crimes involve substantially different controlled substances, and thus that a cocaine offense is not probative of the elements of a methamphetamine offense under Rule 404(b). See, e.g., *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1015 (9th Cir.1995) ("[T]he relevant factor is the type of activity undertaken, not the identity of the drugs").

1    sufficient to prove the prior bad act.  Evidence of a prior conviction is sufficient proof that a
2    defendant committed the crime.  *Howell*, 231 F.3d at 628-29 ("The fact that Howell was convicted
3    is sufficient proof that he committed the prior acts"); *Arambula-Ruiz*, 987 F.2d at 603 ("In this
4    case, the fact that Arambula was convicted of the prior drug offense is sufficient proof that the
5    defendant committed the prior act").  The government states that it intends to introduce the
6    Burbank police reports as evidence of the acts that took place in 2006.  The government does not
7    identify any other evidence of the prior conviction that it intends to proffer.  At the outset, the
8    police reports would not be competent evidence of the prior conviction, given that they were
9    authored before Garcia shortly after her arrest and before she pleaded guilty.  Second, the court
10   has excluded the police reports.  Because the government does not identify other competent
11   evidence of the convictions on which it might rely, the court cannot presently find that the
12   convictions are admissible.  If the government can identify evidence of the prior convictions that
13   it wishes to introduce, the court will reconsider this ruling.  To ensure that there is no other basis
14   for exclusion, moreover, the court will also address the fourth factor identified in the case and
15   balance the probative value of the evidence against any prejudicial effect it might have.

16        As respects the fourth factor, Garcia's prior convictions are not too remote in time to be
17   relevant.  In *Arambula-Ruiz*, the Ninth Circuit noted prior decisions holding that "a conviction
18   which occurred five years prior to the charge at issue was not too remote."  *Arambula-Ruiz*, 987
19   F.2d at 603-04.  In fact, the Ninth Circuit has held that offenses more than ten years old are not
20   too remote in time for purposes of admission under Rule 404(b).  See *United States v. Simtob*, 901
21   F.2d 799, 807-08 (9th Cir. 1990) (12 year-old conviction); *United States v. Ross*, 886 F.2d 264,
22   267 (9th Cir. 1989) (13 year-old prior act); *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir.
23   1989) (10 year-old prior conviction).  For this reason, the court finds that Garcia's convictions,
24   which occurred in 2006, are not too remote to be relevant.

25        If the government is able to present satisfactory proof of the prior convictions, each
26   element of the four-part test for admissibility under Rule 404(b) would be satisfied, and the court
27   would be required to balance the probative value of Garcia's convictions against their prejudicial
28   effect under Rule 403.  As the Advisory Committee Notes to Rule 404 state: "The determination

1   must be made whether the danger of undue prejudice outweighs the probative value of the
2   evidence in view of the availability of other means of proof and other facts appropriate for making
3   decision[s] of this kind under Rule 403." See also *Montgomery*, 150 F.3d at 1001 ("In addition
4   to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing
5   test – its probative value must not be substantially outweighed by the danger of unfair prejudice").
6   "The Government has the burden of demonstrating that the evidence of other crimes satisfies these
7   requirements." *Id*.

8       The probative value of Garcia's prior narcotics convictions is high because they
9   demonstrate her intent, knowledge and absence of mistake.  There is some danger of unfair
10  prejudice, however, because jurors might judge Garcia on the basis of the prior convictions rather
11  than the facts of this case.  Stated otherwise, the jury might improperly infer from the evidence
12  that if Garcia  committed similar crimes in the past, she is likely to have committed the crimes
13  with which she is charged in the indictment.  The evidence may only be excluded under Rule 403,
14  however, if the danger of unfair prejudice substantially outweighs its probative value.  After
15  conducting this balancing test, the court finds that evidence of the narcotics convictions should not
16  be excluded under Rule 403.  The court will instruct the jury that the evidence, if admitted,  can
17  may be considered *only* for the limited purpose of assessing Garcia's knowledge, intent, and
18  absence of mistake.  Such an instruction will ensure that the jury uses the evidence in the proper
19  fashion. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988) ("[T]he trial court shall, upon
20  request, instruct the jury that the similar acts evidence is to be considered only for the proper
21  purpose for which it was admitted"); *United States v. Boise*, 916 F.2d 497, 501 (9th Cir. 1990)
22  ("In applying the fourth part of *Huddleston*, Boise did request an instruction under Rule 105 that
23  the jury consider similar act evidence only for the purposes for which it was admitted.  The court
24  properly instructed the jury that the prior injuries were not proof that Boise committed the acts
25  charged and were relevant only as proof of the manner of death and of intent").

26      The defendant's motion *in limine* to exclude evidence of her prior narcotics-related
27  convictions is granted without prejudice.  If the government can identify competent evidence of
28  the prior convictions that it seeks to admit, the court will reconsider this ruling.

1

2

### III.  CONCLUSION

3      For the foregoing reasons, defendant's motions *in limine* are granted.  Defendant's motion

4 to exclude the fact of her prior convictions is granted without prejudice.  The government may

5 seek reconsideration of that ruling if it is able to identify competent evidence of the fact of the

6 prior convictions that it seeks to introduce.

7

8 DATED: July 30, 2010                                   _____

9                                                        MARGARET M. MORROW
                                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28